UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

DEBORAH B. GIBSON                                    Case No. 04-11822

    Debtor

# ORDER GRANTING THE TRUSTEE'S MOTION TO COMPEL ENFORCEMENT OF THE SETTLEMENT

    Melissa W. Wetzel, Attorney for Debtor, Mobile, AL
    Jeffery J. Hartley, Attorney for Trustee, Mobile, AL
    E. Russell March, III, Attorney for Maersk Line Limited and Maersk, Inc., Johnstone Adams, Mobile, AL
    Bristol A. Baxley, Attorney for Deborah Gibson in the Jones Act claim, Rome, Arata & Baxley, L.L.C., Pearland, TX
    William R. Lancaster, Attorney for Deborah Gibson in the Jones Act claim, Mobile, AL
    Thomas S. Rue, Attorney for Maersk in the Jones Act claim, Johnstone Adams, Mobile, AL

This matter came before the Court on the trustee's motion to compel the debtor to execute a settlement the Court previously approved on February 1, 2006. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. For the reasons indicated below, the Court is granting the trustee's motion to compel enforcement of the settlement.

## FACTS

Deborah Gibson, the debtor, filed a chapter 13 case on March 25, 2004. In her Schedule B ("Personal Property"), she listed a contingent claim ("Jones Act claim") against Maersk Line Limited and Maersk, Inc. ("Maersk").[1] On February 11, 2005, the debtor filed two motions

---

[1] The debtor's actual entry in Schedule B listed "Maresk L" but subsequent documents filed with the Court provided the full names of the defendants.

seeking to employ both Bristol A. Baxley and William Lancaster as special counsel to prosecute the Jones Act claim against Maersk. The Court granted both motions on April 21, 2005. On September 27, 2005, the debtor filed a motion requesting the Court to approve a settlement reached with Maersk, wherein Maersk "agreed to pay $29,000 to settle this matter in full." The Court orally granted the debtor's motion on February 1, 2006, and issued a written order to the same effect on February 9, 2006. After the attorneys announced a settlement of the division of the proceeds, the debtor assented on the record to the recitation of the financial terms. On November 3, 2006, the trustee filed a Motion to Enforce Settlement, wherein the trustee informed the Court that the debtor had not yet executed the settlement. After several continuances at the parties' request, the Court held a hearing on this motion on February 7, 2007.

At the hearing, Thomas S. Rue, the trial attorney for Maersk in the Jones Act claim, testified that he specializes in maritime law and has previously conducted settlement negotiations with Mr. Baxley on several occasions. Mr. Rue testified that he wrote a letter dated April 28, 2004, to Mr. Baxley informing him that his client was willing to settle for $29,000 if the debtor signed a "standard Johnstone, Adams Release" ("release").[2] Thereafter, Mr. Rue received a call from Mr. Baxley accepting the settlement offer. Mr. Baxley confirmed his acceptance of the settlement offer during his testimony. Subsequently, Mr. Rue sent another letter to Mr. Baxley, dated December 29, 2004[3], wherein he attached five copies of the relevant release forms and requested that three executed copies be returned to him. According to Mr. Rue, the terms of the release forms sent to Mr. Baxley are generally accepted for purposes of settling a Jones Act

---

[2]This letter was offered and received into evidence as Exhibit 1.

[3]This letter was offered and received into evidence as Exhibit 2.

claim, and he has sent a similar type of release to Mr. Baxley in prior cases. During his testimony, Mr. Baxley testified that he knew the terms of a standard release and was not surprised by any language included in the release sent to him by Mr. Rue.

Mr. Rue, however, never received an executed copy of the release. Instead, he received a call months later informing him that the debtor objected to a provision in the release stating that the debtor releases Maersk from any liability relating to her potential exposure to asbestos or benzene. Mr. Rue testified that he deleted this provision from the release in May 2006 and sent the amended release to Baxley on May 31, 2006.[4] Upon this revision, Mr. Rue thought that he and the debtor had a settlement deal. However, he was subsequently informed weeks or months later that the debtor objected to a provision in the release which stated, in essence, that the debtor would indemnify Maersk for any liability it incurred as a result of being sued by her spouse regarding the same Jones Act claim.

Mr. Baxley testified that he reviewed the settlement agreement with the debtor. He elaborated that he made the debtor aware that she was receiving a $29,000 offer in exchange for her release of all other claims against Maersk. Mr. Baxley testified that upon receiving the revised release deleting the asbestos/benzene language, he believed that a settlement had been reached since there were no more issues at the time regarding the language in the release. However, Mr. Baxley testified that the debtor objected to the indemnification language in the release, and he spoke with Mr. Rue about these changes sometime after February 1, 2006.

The debtor testified that she was present at the Court's February 1, 2006, hearing, whereby the Court approved her settlement with Maersk regarding the Jones Act claim. The

---

[4]Mr. Rue believed the amended release was emailed to Mr. Baxley on May 31, 2006.

3

debtor contends, however, that she had not, as of that time, seen the release documents. The debtor testified that she received a copy of the release documents after that hearing. On cross-examination, the debtor clarified that when she first received the release documents, she merely glanced at them. Upon noticing the asbestos/benzene language, the debtor wanted that language deleted. The debtor invoked the attorney-client privilege when asked whether that change was requested by Mr. Baxley. The Court implied at the hearing that it could draw a negative inference from the debtor's invocation of the attorney-client privilege.

The debtor contended that she did not read the release documents because she trusted her lawyer to make the right decision. However, she claimed that she did not understand the terms of the release documents and did not know that she would be releasing all of her claims against Maersk. The debtor initially alleged that Mr. Baxley did not go over the terms of the release documents with her; subsequently testified that she had an opportunity to go over the terms of the release documents with Mr. Baxley over the telephone; and later testified that she spoke with someone else at Mr. Baxley's office, and not Mr. Baxley himself, regarding the terms of the release documents. The debtor testified that she did not actually read the release documents until months to a year after she first skimmed them. The debtor conceded that this would mean that she did not read the release documents until February of 2007. The debtor stated that she still is not comfortable with some provisions of the release documents and does not want to sign them.

## LAW

Maersk's attorney, E. Russell March, argued that Ms. Gibson was ably represented by Mr. Baxley during the Jones Act claim. Further, Ms. Gibson had the opportunity to read the release documents well before the one year or so it may have taken her to do so; she had the opportunity

4

to discuss the terms with Mr. Baxley; and she had the opportunity to direct questions to Mr. Baxley. Therefore, even though she refuses to sign the present release documents, her signature is not required. When Ms. Gibson requested the deletion of the asbestos/benzene language, that was a counteroffer; when Mr. Rue deleted that language, that was an acceptance, thereby forming a valid oral contract.[5] Mr. March further posits that the statute of limitations has expired in regards to the Jones Act claim and, if the release isn't validated, the estate may no longer have any right to such a claim.

The debtor's attorney countered that the Court's February 1, 2006, hearing merely approved a settlement amount of $29,000, and not the full terms of the release documents. Since the debtor never had the opportunity to review the release documents prior to the Court's hearing, she should not be forced to sign a release with which she is uncomfortable signing. In regard to the expiration of the statute of limitations, the debtor's attorney stated that since Ms. Gibson did not understand the terms of the release, her case may be allowed to be reopened.

Seamen's releases are "subject to careful scrutiny." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942). "'One who claims that a seaman has signed away his [or her] rights to what in law is due him [or her] must be prepared to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman.'" *Id.* quoting *Harmon v. United States*, 59 F.2d 372, 373 (5th Cir. 1932). Therefore, the party arguing for the validity of the release has the burden to prove that the release "was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his [or her] rights." *Garrett*, 317 U.S. at 248. "The adequacy of the consideration and the nature of the medical and legal advice available

---

[5]The trustee's attorney made the same argument at the hearing.

5

to the seaman at the time of signing the release are relevant to an appraisal of this understanding." *Id*.

The Court would first like to address its implication at the hearing that it could draw a negative inference due to Ms. Gibson's invocation of the attorney-client privilege. After reviewing the case law, the Court finds that it cannot draw a negative inference, and it will not do so. *See Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990). This does not affect the Court's ruling. However, if Ms. Gibson wanted to rely on an advice of counsel defense, she would have needed to waive the attorney-client privilege to allow the Court to consider what she told her attorney and vice versa. Without that evidence, the Court must rely upon the evidence that was presented.

Ms. Gibson's testimony showed that upon "glancing" at the release documents, she noticed that they purported to release all potential claims she had against Maersk regarding any exposure to asbestos or benzene. Since she did not like this language, she requested a change be made. The Court notes that the asbestos/benzene language is not easily found by a perfunctory glance. That language is contained on pages 2 and 5 of a 12 page document. Moreover, the Court read the release documents and found them to be quite understandable. Despite Ms. Gibson's testimony that she did not understand the terms in the release documents, her request to change language not easily found by a perfunctory glance, in the Court's mind, evidences Ms. Gibson's understanding that signing the release document would release Maersk of all claims she had against it regarding any exposure to asbestos and/or benzene.

The evidence also showed that as of April 21, 2005, the debtor has been represented by Mr. Baxley and Mr. Lancaster regarding the Jones Act claim. Mr. Baxley and Mr. Rue have

6

previously dealt together on settlements regarding Jones Act claims in other cases. Mr. Baxley also testified that the release documents sent to him by Mr. Rue were standard release forms and contained no surprises. Although Ms. Gibson claimed at one point during her testimony that Mr. Baxley did not explain the terms of the release to her, she testified at another point that she and Mr. Baxley reviewed the terms of the release over the telephone. Ms. Gibson's testimony was inconsistent, at best, and carries less weight with the Court than the other testimony received by the Court. There is no evidence in the record to contradict the Court's observances that Mr. Baxley was a competent attorney who ably represented the debtor in her Jones Act claim and that Ms. Gibson read the release documents..

During argument, Ms. Gibson's attorney argued that the Court's approval of the settlement merely approved the $29,000 payment and not the full terms of the release. This concession proves that, at least in the debtor's mind, $29,000 was adequate consideration for the injuries she sustained. There is no evidence before the Court regarding the extent of the medical advice given the debtor.

Maersk had the burden of proving that the release was validly entered into, and the Court finds that its burden has been met. The debtor understood the terms of the release to the extent that she requested a change, which was made; the debtor was ably represented by counsel throughout her Jones Act claim proceeding; and the debtor conceded that $29,000 was adequate consideration for the injuries she sustained. The fact that the debtor allegedly chose not to actually read the entire release documents fully until perhaps as late as February of 2007, if true, is a consequence of her own doing. Ms. Gibson's own testimony was contradictory on this point. Maersk is not required to sit and wait while the debtor sleeps on her own rights.

7

However, the debtor still refuses to sign the release, arguing that it is not valid without her signature. The Court disagrees. The Court finds that the request to delete the asbestos/benzene language was a counteroffer, and the subsequent deletion by Maersk's attorney was an acceptance. *See Cook's Pest Control, Inc. v. Rebar*, 852 So. 2d 730, 736-37 (Ala. 2002). Both Mr. Baxley and Mr. Rue even testified that they both believed an agreement had been reached at that point. "The parties negotiated at arms-length and in apparent good faith. There is no issue of the competency of counsel or the adequacy of legal advice[, as Ms. Gibson cannot invoke that defense without waiving the attorney-client privilege]. Nor does there appear any taint of fraud, deception, coercion or overreaching by [Maersk or its attorney] in the negotiations eventuating in the settlement." *Strange v. Gulf & South Am. Steamship Co., Inc.*, 495 F.2d 1235, 1236 (5th Cir. 1974). "In the absence of a factual basis rendering it invalid, and we find none here, an oral agreement to settle a personal injury cause of action within the admiralty and maritime jurisdiction of the federal courts is enforceable and cannot be repudiated." *Id*.

THEREFORE IT IS ORDERED AND ADJUDGED that the trustee's motion to compel is GRANTED and the debtor shall sign the settlement documents the Court found to be a counteroffer and acceptance within 10 days from entry of this order or she shall be deemed to have signed them for the reasons indicated in this order.

Dated: February 14, 2007

*Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE